## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

GUSTAVO BRUCKNER,                          )
                                           )          Case No. 1:03-cv-12483
               Plaintiff,         )
                                           )
       v.                               )
                                           )
MASSACHUSETTS FINANCIAL                     )
SERVICES COMPANY, et al.,                   )
                                           )
            Defendants.          )
_____ )

*[Additional Captions on Following Page]*

### MEMORANDUM OF PLAINTIFFS JOHN SEWARD, HUGH F. BOYD, III, SANDRA S. BOYD, AND GARY G. STERZEL IN SUPPORT OF MOTION TO BE APPOINTED LEAD PLAINTIFFS; TO APPROVE PROPOSED LEAD PLAINTIFFS' CHOICE OF COUNSEL; AND TO CONSOLIDATE ALL RELATED ACTIONS

1

| | |
|---|---|
| BRUCE RIGGS,<br><br>   Plaintiff,<br><br>   v.<br><br>MASSACHUSETTS FINANCIAL<br>SERVICES COMPANY, et al.,<br><br>   Defendants. | Civ. No. 03-cv-12500 (WGY) |
| OLIVER S. TRONE,<br><br>   Plaintiff,<br><br>   v.<br><br>MFS CAPITAL OPPORTUNITIES<br>FUND, et al.,<br><br>   Defendants. | Civ. No. 03-cv-12514 (WGY) |
| DELORES B. MANSON,<br><br>   Plaintiff,<br><br>   v.<br><br>MASSACHUSETTS FINANCIAL<br>SERVICES COMPANY, et al.,<br><br>   Defendants. | Civ. No. 03-cv-12515 (MEL) |
| DAVID SHAEV,<br><br>   Plaintiff,<br><br>   v.<br><br>MASSACHUSETTS FINANCIAL<br>SERVICES COMPANY, et al.,<br>   Defendants. | Civ. No. 03-cv-12520 (MEL) |

2

DANIELLE ADAMS,               )
                                    )     Civ. No. 03-cv-12536 (WGY)
           Plaintiff,     )
                                    )
        v.                   )
                                    )
MFS CAPITAL OPPORTUNITIES )
FUND, et al.,                    )
                                    )
           Defendants.   )
_____)
JACOB ELEPHANT,        )
                                    )     Civ. No. 03-cv-12570 (WGY)
           Plaintiff,     )
                                    )
        v.                   )
                                    )
MASSACHUSETTS FINANCIAL  )
SERVICES COMPANY, et al.,    )
                                    )
           Defendants.   )
_____)
ZACHARY ALAN STARR,     )
                                    )     Civ. No. 03-cv-12595 (MEL)
           Plaintiff,     )
                                    )
        v.                   )
                                    )
MASSACHUSETTS FINANCIAL  )
SERVICES COMPANY, et al.,    )
                                    )
           Defendants.   )
_____)
YAKOV BURSTEIN, IRA,     )
                                    )     Civ. No. 03-cv-12622 (WGY)
           Plaintiff,     )
        v.                   )
                                    )
MFS GLOBAL TELECOMMUNICATIONS )
FUND, et al.,                    )
                                    )
           Defendants.   )
_____)

3

| | | |
|---|---|---|
| ALBERT FELDMAN, | ) | |
| | ) | Civ. No. 04-cv-10009 (RGS) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MASSACHUSETTS FINANCIAL | ) | |
| SERVICES COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| ED CASEY, | ) | |
| | ) | Civ. No. 04-cv-10010 (MEL) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MASSACHUSETTS FINANCIAL | ) | |
| SERVICES COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| HUGH F. BOYD, III, | ) | |
| | ) | Civ. No. 04-cv-10252 (WGY) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MASSACHUSETTS FINANCIAL | ) | |
| SERVICES COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| HAROLD A. BERGER, | ) | |
| | ) | Civ. No. 04-cv-10253 (WGY) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MASSACHUSETTS FINANCIAL | ) | |
| SERVICES COMPANY, et al., | ) | |
| Defendants. | ) | |
| | ) | |

4

## I.    INTRODUCTION

Class members John Seward, Hugh F. Boyd, III, Sandra S. Boyd, and Gary G. Sterzel

("Movants") suffered a substantial loss as a result of their purchase of shares of the MFS family

of mutual funds (the "MFS Funds")[1] between December 15, 1998  and December 8, 2003 (the

"Class Period").  Pursuant to Section 27(a)(3)(B) of the Securities Act of 1933, 15 U.S.C. §77z-

1(a)(3)(B) (the "Securities Act"), and Section 21D(a)(3)(B) of the Securities Exchange Act of

1934, 15 U.S.C. §78u-4(a)(3)(B) (the "Exchange Act"), as amended by Section 101(a) of the

Private Securities Litigation Reform Act of 1995, P.L. 104-67, 109 Stat. 737 (the "Reform Act"

or "PSLRA").  Movants respectfully submit this memorandum of law in support of their motion

for an Order: (1) appointing Movants as Lead Plaintiffs; (2) approving Movants' choice of the

law firms of Spector Roseman & Kodroff, P.C. and  Much Shelist Freed Denenberg Ament &

Rubenstein, P.C as Co-Lead Counsel, and the law firm of Hagens Berman, LLP as Liaison

Counsel; and (3) consolidating the above-captioned actions, as well as any other related actions

---

[1] As defined in the Complaint, the MFS Funds at issue in these actions include:  MFS Capital Opportunities Fund, MFS Core Growth Fund, MFS Emerging Growth Fund, MFS Large Cap Growth Fund, MFS Managed Sectors Fund, MFS Mid Cap Growth Fund, MFS New Discovery Fund, MFS New Endeavor Fund, MFS Research Fund, MFS Strategic Growth Fund, MFS Technology Fund, Massachusetts Investors Growth Stock, MFS Mid Cap Value Fund, MFS Research Growth and Income Fund, MFS Total Return Fund, MFS Union Standard Equity Fund, MFS Utilities Fund, MFS Value Fund, Massachusetts Investors Trust, MFS Aggressive Growth Allocation Fund, MFS Conservative Allocation Fund, MFS Moderate Allocation Fund, MFS Bond Fund, MFS Emerging Markets Debt Fund, MFS Government Limited Maturity Fund, MFS Government Mortgage Fund, MFS Government Securities Fund, MFS High Income Fund, MFS High Yield Opportunities Fund, MFS Intermediate Investment Grade Bond Fund, MFS Limited Maturity Fund, MFS Research Bond Fund, MFS Strategic Income Fund, MFS Alabama Municipal Bond Fund, MFS Arkansas Municipal Bond Fund, MFS California Municipal Bond Fund, MFS Florida Municipal Bond Fund, MFS Georgia Municipal Bond Fund, MFS Maryland Municipal Bond Fund, MFS Massachusetts Municipal Bond Fund, MFS Mississippi Municipal Bond Fund, MFS Municipal Bond Fund, MFS Municipal Limited Maturity Fund, MFS New York Municipal Bond Fund, MFS North Carolina Municipal Bond Fund, MFS Pennsylvania Municipal Bond Fund, MFS South Carolina Municipal Bond Fund, MFS Tennessee Municipal Bond Fund, MFS Virginia Municipal Bond Fund, MFS West Virginia Municipal Bond Fund, MFS Emerging Markets Equity Fund, MFS Global Equity Fund, MFS Global Growth Fund, MFS Global Total Return Fund, MFS International Growth Fund, MFS International New Discovery Fund, MFS International Value Fund, and MFS Research International Fund.

pending in this Court and any subsequently filed or transferred actions.

Congress's objective in enacting the Reform Act was to encourage investors, such as Movants, who have a substantial stake in the action to step forward to serve as lead plaintiffs in federal securities class actions. *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999) (Congress expected that the lead plaintiff would normally be an investor with a large stake in the outcome). Congress decided that investors with significant losses would not only have a true financial interest in the action, but also properly guide the litigation. *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 442 (S.D. Tex. 2002). Therefore, the Movants are exactly the type of investors that Congress intended to serve as lead plaintiff.

Movants have the desire, ability and resources to actively participate in the monitoring of this class action so that a maximum recovery for the putative class is obtained. *See Berger v. Compaq Computer Corp.*, 257 F.3d 475, 483 (5th Cir. 2001) ("securities class actions [should] be managed by active, able class representatives who are informed and can demonstrate they are directing the litigation").

Movants have a significant stake in MFS Funds. The market timing and late trades complained of by Movants and other potential plaintiffs in related actions caused each plaintiff to be harmed some as-of-yet undetermined amount. The nature of the market timing and late trades complained of allowed defendants to dilute any increase in value of the mutual funds or to concentrate the decrease of the value of the mutual funds among each of the MFS Funds shareholders. The profits that defendants accrued as a result of their wrongful conduct came at a cost to all shareholders of the MFS Funds on a one-to-one basis. Each dollar defendants made as a result of their illegal and fraudulent trading came directly at a dollar cost to and out of the

Funds those trades were made in such that each individual plaintiff and class member was harmed in proportion to the percentage of the fund and the number of shares they owned at the time the illegal market timing and late trades were made. Accordingly, Movants have a significant financial interest to prosecute claims on behalf of purchasers of shares of the MFS Funds.

Movants will also fairly and adequately represent the interests of the class, as they are "'willing' and 'able' to 'take an active role in and control the litigation and to protect the interests. . .'" of the class. *Berger,* 257 F.3d at 479. Movants have signed certifications expressing their desire and willingness to serve as representative parties on behalf of the Class. *See* Ex. A hereto. Therefore, the Movants should be appointed Lead Plaintiffs in the consolidated action.

## II.   SUMMARY OF FACTS

This is a class action on behalf of a class of all purchasers, redeemers and holders of MFS mutual fund shares (the "Class") who purchased, held, or otherwise acquired shares between December 15, 1998 and December 8, 2003, seeking to pursue remedies under the Securities Act, the Exchange Act, the Investment Company Act of 1940 (the "Investment Company Act") and for common law breach of fiduciary duties.

This class action stems from the practice of the MFS Funds allowing certain favored investors to engage in market timing and late trading in the MFS Funds despite assurances to the public that they did not allow such short term trading. Mutual fund shares are valued once a day, usually at 4:00 p.m. EST, when the New York market closes. The price, known as the Net Asset Value or "NAV," generally reflects the closing prices of the securities that comprise a given

fund's portfolio, plus the value of any cash that the fund manager maintains for the fund. A mutual fund stands ready to buy or sell (the mutual fund industry refers to sales as "redemptions") its shares at the NAV with the public all day, any trading day. But, unlike a stock, the price of a mutual fund does not change during the course of the day. Accordingly, orders placed at any time during the trading day up to the 4:00 p.m. cutoff gets that day's NAV, but an order placed at 4:01 p.m. or thereafter receives the next day's NAV. This is the rule of "forward pricing," which became law in 1968.

This system assures a level playing field for investors. Mutual fund investors do not know the exact price at which their mutual fund orders will be executed at the time they place the orders (unlike stock investors) because NAVs are calculated after the market closes. Orders placed on or before 4 p.m. on a given day are subject to the NAV determined that day while orders placed after 4 p.m. are subject to the NAV calculated the next day. Thus, all investors have the same opportunity to assemble "pre-4:00 p.m. information" before they buy or sell. And no investor has (or at least is supposed to have) the benefit of "post-4:00 information" prior to making an investment decision. The importance of this protection becomes clear when, for example, there is an event after 4:00 p.m. (like an unexpectedly positive corporate earnings announcement) that makes it highly probable that the market for the stocks in a given fund will open sharply higher the next day. Those who buy shares in the fund after the announcement are not supposed to share in this profit by being able to purchase shares at the previous days NAV. Their purchase order should receive the NAV set at the end of the next day, when the market will have digested the news and reflected its impact in (1) higher prices for the stock held by the fund and, therefore, (2) a higher NAV for the fund.

8

An investor who has the ability to avoid forward pricing and buy at the prior NAV enjoys a significant trading edge. This is what the MFS Funds were allowing certain favored investors to do. He or she can wait until after the market closes for significant news such as the above-earnings announcement to come out, and then buy the fund at the old, low NAV that does not reflect the impact of the new information. When the market goes up the next day, the investor would be able to sell and realize an arbitrage profit based solely on the privilege of trading on the "stale" NAV. This practice is called "late trading" or in similar circumstances, "market timing."

The late trader's arbitrage profit comes dollar for dollar from the mutual fund itself. In essence, the late trader is being allowed into the fund after it is closed for the day to participate in a profit that would otherwise have gone completely to the fund's buy-and-hold investors. The increase in value the following day is diluted among the remaining shares by the shares bought the previous day by the favored investor. Conversely, when the late trader has knowledge that the NAV will decrease the following day, they sell shares in their account, thereby concentrating the subsequent loss of value that occurs the next day among the remaining shares. This is one of the ways defendants scheme damaged the Class. This is also the reason this is not the typical rule securities fraud case, insofar as the misrepresentations did not artificially inflate the price of the shares.

The wrongful conduct complained of harmed the Class by either diluting gains among the shares or concentrating the losses among the shares. When the favored traders were aware that the NAV would rise the next day and were allowed to purchase shares of the MFS Funds at the previous day's NAV, the result was to keep the NAV of the MFS Fund shares from increasing as much as they should have in the absence of the market timing and late trading

9

activity. The increase in the value of the fund was distributed among more shares than it should have been. Or when the favored investors had knowledge that the following day's NAV would fall and were allowed to sell shares at the previous day's NAV, the result was to cause the NAV to fall more than it should have, thereby concentrating the subsequent loss in value among the remaining shares. The same loss was distributed among fewer shares because the favored traders were allowed to, and knew to sell.

Further, shareholders are damaged by market timing and late trading because when the late trader redeems his shares and claims his profit, the mutual fund manager has either to sell stock or use cash on hand -- stock and cash that used to belong to the long-term investors - to give the late trader his gain. These stock sales by the fund come with transaction costs that are absorbed by the fund and its shareholders as a whole, but only benefit the favored investors allowed to make late trades. The forward pricing rule was enacted to prevent this kind of abuse.

In return for its permission to engage in late trading, certain favored investors agreed to leave millions of dollars or "sticky assets" in other funds (such as bond funds) controlled by the same mutual fund companies. Further, the MFS Funds would loan money to certain defendants participating in this scheme by allowing trading on a margin. The MFS Funds allowed market timing and late trades despite assurances in the Funds' prospectuses that late trading and market timing were not allowed in their funds, and despite a compliance system by which the MFS Funds were supposedly policing against such short term market timing and late trading.

Mutual funds are designed for buy-and-hold investors, and are therefore the favored investment for retirement and college savings accounts. Nevertheless, market timers routinely try to trade in and out of certain mutual funds in order to exploit inefficiencies in the method NAVs

10

are calculated. They impose their transaction costs on the long-term investors. Indeed, trades

necessitated by market timed redemptions can also lead to realization of taxable capital gains at

an undesirable time, or may result in managers having to sell stock into a falling market.

Accordingly, fund managers often seek to minimize the disruptive impact of timers by keeping

cash on hand to pay out the timers' profits without having to sell stock. This "strategy" does not

eliminate the transfer of wealth out of the mutual fund caused by timing; it only reduces the

administrative cost of those transfers. However, at the same time it can also reduce the overall

performance of the fund by requiring the fund manager to keep a certain amount of the funds'

assets in cash at all times, thus depriving the investors of the advantages of being fully invested

in a rising market. Some fund managers even enter into special investments as an attempt to

"hedge" against timing activity (instead of just refusing to allow it), thus deviating altogether

from the ostensible investment strategy of their funds, and incurring further transaction costs.

## III.   PROCEDURAL BACKGROUND

To date, there are approximately thirteen (13) cases pending in this District that allege

claims for violation of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5

promulgated thereunder, and/or Sections 11 and 15 of the Securities Act, and/or Sections 34 and

36 of the Investment Company Act, and/or state law claims for breach of fiduciary duty, on

behalf of investors who purchased shares of MFS Funds in the open market during the Class

Period. These cases are included in the caption of this motion.

The Reform Act provides that "if more than one action on behalf of a class asserting

substantially the same claim or claims arising under this chapter has been filed," the Court shall

not make the determination of the most adequate plaintiff until "after the decision on the motion

11

to consolidate is rendered." 15 U.S.C. §78u-4(a)(3)(B)(ii). *See also Enron*, 206 F.R.D. at 438.

Consolidation is particularly appropriate in securities class action litigation especially where, as

here, the claims asserted in all the actions are virtually identical. *Id.*

## IV.   ARGUMENT

### A.   Movants Should Be Appointed
### Lead Plaintiffs Pursuant To The Reform Act

The Reform Act provides a detailed procedure for the selection of lead plaintiff to

oversee securities class actions. First, within 20 days after the date on which a class action is

filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national

business-oriented publication or wire service, a notice advising members of the purported

plaintiff class:

> (I)     of the pendency of the action, the claims asserted therein, and the
> purported class period; and
>
> (II)    that, not later than 60 days after the date on which the notice is
> published, any member of the purported class may move the court
> to serve as lead plaintiff of the purported class.

*See* 15 U.S.C. §78u-4(a)(3)(A)(i). In this case, notice was first published on the *PR Newswire* on

December 11, 2003. *See* Ex. B hereto. Accordingly, this motion is timely filed within 60 days

of the date of publication.

The Court is directed by the Reform Act to consider any motions brought by plaintiffs or

purported class members to appoint lead plaintiffs, filed in response to any such notice, not later

than 90 days after the date of publication, or as soon as practicable after this Court decides any

pending motion to consolidate any actions asserting substantially the same claims. *See* 15 U.S.C.

§78u-4(a)(3)(B)(i). In selecting a lead plaintiff, the Court must appoint the "most adequate

plaintiff" based on the following statutory factors:

> the court shall adopt a presumption that the most adequate plaintiff
> in any private action arising under this chapter is the person or
> group of persons   that. . .

> (aa)    has either filed the complaint or made a motion in response
>         to a notice;

> (bb)    in the determination of the court, has the largest financial
>         interest in the relief sought by the class; and

> (cc)    otherwise satisfies the requirements of Rule 23 of the
>         Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

When applying these factors, courts have emphasized that, in enacting the Reform Act,

Congress "call[ed] for greater supervision by the Court in the selection of which plaintiffs will

control the litigation." *Enron*, 206 F.R.D. at 439. As a result, each movant has the initial burden

of demonstrating to the court that it is the most adequate plaintiff. *See Berger*, 257 F.3d at 481

("[a]dequacy is for the plaintiffs to demonstrate"); *Enron*, 206 F.R.D. at 441 ("The adequacy of

the putative class representative(s) and of plaintiffs' counsel should not be presumed, however,

in the absence of proof to the contrary; plaintiff bears the burden of demonstrating his and his

counsel's adequacy"). In support of their desire  to serve as lead plaintiffs, Movants have signed

certifications expressing their willingness to serve as a representative party on behalf of the

Class. *See* Ex. A hereto.

### 1.    Movants Have A Significant Financial
### Interest In The Relief Sought By The Class

The nature of the defendants' fraud did not have the typical effect of inflating the price of

the underlying securities. Rather, the fraud diminished the subsequent increase in value of the

fund shares when the market timing and late traders bought shares in anticipation of an upswing in the NAV the following day, and concentrated the decrease in value of the fund shares when they sold shares in anticipation of a downswing in the NAV the following day. Thus, the loss each class member suffered was a function not of the market price of the fund shares at any specific time, but rather the change in the NAV of the fund shares attributable to market timing and late trading. Each class member's loss is therefore independent of the market price or specific NAV of the shares at any given time - rather their losses are calculable in proportion to their stake in the fund for the duration of the time when market timing and late trading was occurring.

The Reform Act is silent as to the manner in which courts should determine the "largest financial interest" among the proposed class members when the damages are not calculable by reference to the market price of a security. 15 U.S.C.§78u-4(e)(1). Here, the damages each class member incurred were independent of the specific market price and NAV of the fund shares at any given time. Each class member's damages are calculable in proportion to their ownership stake in the MFS Funds in which they were invested during the time in which the wrongful market timing and late trading occurred. The total damages to the fund shareholders is easily calculable. Because the favored traders reaped profits on a dollar-for-dollar basis at cost to the fund in which the wrongful trades were made, the fund holders were damaged in the aggregate by the amount of profits made from the market timing and late trading, along with any transaction costs or capital gains accrued by the fund in the process of allowing such trading. Thus each fund holders loss is proportional to their percentage stake in the fund, the amount of money invested and number of shares they owned in the fund, not the market price of the shares at any given

14

time.

Numerous courts have utilized a four factor inquiry in assessing the degree of financial interest of a proposed lead plaintiff. *See Schulman v. Lumenis, Ltd.*, No. 02-Civ-1989(DAB), 2003 WL 21415287, at \*5 (S.D.N.Y. June 18, 2003); *In re Crayfish Company Securities Litigation*, No. 00-Civ-6766(DAB), 2002 WL 1268013, at \*4 (S.D.N.Y. June 6, 2002). *See also, In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y.1998); *In re Milestone Scientific Securities Litig.*, 183 F.R.D. 404, 413 (D.N.J. 1998); *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2716, U.S. Dist. LEXIS 12432, at \*17 (N.D. Ill., Aug. 11, 1997). In making this determination the court must consider: (1) the number of shares purchased by the movant, (2) the number of net shares purchased by the movant, (3) the total net funds expended by the movant during the class period, and (4) the losses suffered by the movant. *See also In re Nice Sec. Litig.*, 188 F.R.D. 206, 217 (D.N.J. 1999).

Utilizing this inquiry for the instant case, Movants have a significant financial interest in the outcome of this litigation: (1) collectively, they purchased or acquired in excess of 30,432 shares of the MFS Funds during Class Period; (2) and they collectively invested in excess of $ 404,629 in MFS Funds.[2]

As of this filing, Movants have not received any notice that any other potential applicant has sustained a greater financial loss in connection with the purchase and sale of the MFS Funds during the Class Period, nor have they been served with any papers on behalf of any other

___

[2] Specifically, during the Class Period, John Seward purchased 24,952 shares of the MFS Growth Stock Fund at an investment of $241,789; Hugh F. Boyd, III purchased over 1,880 shares of the Growth Stock Fund for a total of over $41,710, and also purchased over 1,710 shares of the MFS Emerging Growth Fund for over $75,529; Sandra S. Boyd purchased over 1,147 shares of the MFS Mid Cap Growth Fund for a total of over $18,363, and over 170 shares of the MFS Emerging Growth Fund for a total of over $11,000; and Gary G. Sterzel invested over 1,130

movant for Lead Plaintiff in this case. Accordingly, Movants satisfy the second prong of the

"most adequate plaintiff" test.

      **2.**      **Movants Have Made A Substantial Showing That They Satisfy**
                          **The Adequacy And Typicality Requirements Of Rule 23**

The third prong of the "most adequate plaintiff" test is that a lead plaintiff must

otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15

U.S.C. §78u-4(a)(3)(B)(i). Rule 23(a) provides that a party may serve as a class representative

only if the following four prerequisites are met:

        1.      the class is so numerous that joinder of all members is
                  impracticable;

        2.      there are questions of law or fact common to the class;

        3.      the claims or defenses of the representative parties are
                  typical of the claims or defenses of the class; and

        4.      the representative parties will fairly and adequately protect
                  the interests of the class.

Fed. R. Civ. P. 23(a).

In its determination and selection of the most adequate plaintiff, the "Court must be

inordinately careful, making certain that the requirements of section 21D(a) are assiduously

applied in line with the purposes of Congress in the enactment of the 1995 Reform Act." *Burke*

*v. Ruttenberg*, 102 F. Supp. 2d 1280, 1309 (N.D. Ala. 2000); *See also Berger*, 257 F.3d at 484

(stating that the district court has an obligation "to assess the representatives own qualifications

to take an active role in and control the litigation").

---

shares and $16,300 in the MFS Total Return Fund.

### (i)     Movants Will Fairly And Adequately Protect The Interests Of The Class

As stated in the Introduction, it is equally important that the lead plaintiffs not only have a significant financial interest in the case, but also demonstrate their adequacy to oversee the prosecution of the case as a fiduciary to the class. Courts within the First Circuit have noted that adequacy of representation requires a determination that the plaintiffs' interests are not antagonistic to those of the class. *See Parker v. Commonwealth of Mass. Dep't of Corrections*, No. 93-10574-MLW, 1996 WL 74215, at *6 (D. Mass. Feb. 5, 1996); *Pagan v. DuBois*, 884 F. Supp. 25, 28 (D. Mass. 1995). *See also In re Interpublic Securities Litigation*, No. 02-Civ-6257(DLC), 2003 WL 22509414, at *3 (S.D.N.Y. Nov. 6, 2003); *In re Worldcom, Inc. Securities Litigation*, No. 02-Civ-3288(DLC), 2003 WL 22420467, at *10 (S.D.N.Y. Oct. 24, 2003).

The interests of Movants are clearly aligned with those of the Class, and there is no evidence of any conflict of interest between Movants and any other member of the class. Indeed, Movants' financial stake in the recovery of claims, based on their claims from purchases of fund shares in the open market pursuant to the Exchange Act, provides significant and compelling evidence that their interests in prosecuting this action are aligned with the interests of the purchasers of MFS Fund securities.

### (ii)     Movants' Claims Are Typical Of Those Of The Class

The typicality requirement of Rule 23(a) of the Federal Rules of Civil Procedure is satisfied when a plaintiff's claims arise from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. *See In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38, 43 (D. Mass. 2003); *In re*

17

*Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 46 (D. Mass. 2001). Rule 23 does not require that the lead plaintiff be identically situated with all class members.

The questions of law and fact common to the members of the Class which also affect Movants include the following:

(1)   Whether the federal securities laws were violated by defendants' acts as alleged herein;

(2)   Whether defendants breached their fiduciary duties by engaging in fraudulent activity; and

(3)   Whether the members of the Class have sustained damages and, if so, what is the appropriate measure of damages.

These common questions of law and fact apply to Movants and to all members of the purported Class. Movants purchased securities issued by the MFS Funds during the Class Period and suffered damages as a result of defendants' fraudulent scheme and in reliance on their misrepresentations that they would not allow market timing or late trading in their funds, as did all of the other members of the Class. The typicality requirement is therefore satisfied because Movants' claims are based on the same legal theories and arise from the same event or course of conduct giving rise to the claims of other class members. *See In re Corel Corp., Inc. Sec. Litig.*, 206 F.R.D. 533, 541-542 (E.D. Pa. 2002).

**B.   The Court Should Approve Movants' Choice of Counsel**

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the proposed Lead Plaintiff shall, subject to the Courts' approval, select and retain counsel to represent the Class. Movants have selected the law firms of Spector Roseman & Kodroff, P.C. and Much Shelist Freed Denenberg Ament &

Rubenstein, P.C. as Co-Lead Counsel and the law firm of Hagens Berman, LLP as Liaison

Counsel. As illustrated by the attached firm biographies, these firms have extensive experience

in successfully prosecuting securities fraud actions, and have each appeared in major class

actions all around the country. *See* Exs. C, D, E hereto.

## C.      The Above-Captioned Actions Should Be Consolidated

The PSLRA provides that "if more than one action on behalf of a class asserting

substantially the same claim or claims arising under this chapter has been filed," the Court shall

not make the determination of the most adequate plaintiff until "after the decision on the motion

to consolidate is rendered." 15 U.S.C. §78u-4(a)(3)(B)(ii). Thereafter, the Court "shall appoint

the most adequate plaintiff as lead plaintiff for the consolidated actions." *Id.*

Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, when actions involving

common questions of law or fact are pending, the district court is vested with broad powers to

consolidate such actions if the court, in its discretion, determines that consolidation would

facilitate the administration of justice. *See Mayo v. Apropos Tech., Inc.*, No. 02-CV-8406, 2002

WL 193393, at * 2 (N.D. Ill. Feb. 7, 2002). Rule 42(a) states:

> When actions involving a common question of law or fact are
> pending before the court, it may order a joint hearing or trial of any
> or all the matters in issue in the actions; it may order all the actions
> consolidated; and it may make such orders concerning proceedings
> therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a).

Consolidation is particularly appropriate in securities class action litigation. *See, e.g.,*

*Schulman*, 2003 WL 21415287, at *2; *Internet Law Library, Inc. v. Southridge Capital*

*Management, LLC*, 208 F.R.D. 59, 61 (S.D.N.Y. 2002); *Primavera Familienstiftgung v. Askin*,

173 F.R.D. 115, 129 (S.D.N.Y. 1997). Indeed, "[i]n securities actions where the complaints are based on the same 'public statements and reports' consolidation is appropriate if there are common questions of law and fact and the parties will not be prejudiced." *In re Olsten Corp. Secs. Litig.*, 3 F. Supp. 2d at 292.

Several other complaints have been filed which relate to  transactions in MFS Fund securities alleging the same fraud with respect to allowing favored investors to engage in market timing and late trading. All of the documents to be reviewed and testimony to be taken relate to this fraudulent scheme and are identical as to all actions. The witnesses, except for plaintiffs for class certification purposes, are all the same. Therefore, consolidation is appropriate and in the interest of judicial economy.

## V.   **CONCLUSION**

For all the foregoing reasons, the Movants respectfully request that the Court: (1) appoint them as the Lead Plaintiffs, (2) approve their selection of lead and liaison counsel, and (3) consolidate the above-captioned actions, as well as any other related actions pending in this Court and any subsequently filed or transferred actions.

Dated: February __9__, 2004

Respectfully submitted,

*Thomas Sobol* (avg).

**HAGENS BERMAN**
Thomas M. Sobol
225 Franklin Street, 26th Floor
Boston, MA 02110
Ph: (617) 482-3700
Fax: (617) 482-3003

**SPECTOR ROSEMAN & KODROFF, P.C.**
Robert M. Roseman
Andrew D. Abramowitz
1818 Market Street, 25th Floor
Philadelphia, PA 19103
Tel:  (215) 496-0300
Fax: (215) 496-6611

**MUCH SHELIST FREED DENENBERG
AMENT & RUBENSTEIN, P.C.**
Carol V. Gilden
Louis A. Kessler
191 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
Tel:  (312) 521-2403
Fax:  (312) 521-2100

**Attorneys for Movants**

21